# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

WYTIKI RAYSHUN MOFFETT,       :

      Petitioner,              :

vs.                       :       CA 21-00054-JB-MU

GUY NOE,                :

      Respondent.

## REPORT AND RECOMMENDATION

Wytiki Rayshun Moffett, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter has been referred to the undersigned for the entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72, and General Local Rule 72(a)(2)(R). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d)(1)(D). Alternatively, it is recommended that the Court find that Moffett's sole claim of ineffective assistance of counsel (based upon counsel laboring under a conflict of interest) has no merit.

## FACTUAL BACKGROUND

On April 2, 2009, a jury of Moffett's peers returned a verdict finding him guilty of first-degree burglary and the attempted murder of Jamie Parker (Doc. 7-7, PageID.1378), and on May 7, 2009, he was sentenced to consecutive terms of life imprisonment without the possibility of parole under Alabama's Habitual Felony

Offender Act (*id.*, PageID. 1398-99). Defense counsel entered oral notice of appeal (*id.*, PageID. 1399). The March 12, 2010 unpublished memorandum decision of the Alabama Court of Criminal Appeals on Moffett's direct appeal (*see* Doc. 7-10, PageID. 1497-1505) contains an excellent summary of the evidence presented at trial.

> The evidence showed that in the late evening of September 23, 2007, while Jamie Parker and his family, which included his wife, his two step-children, his infant daughter, and his mother-in-law, were sleeping inside their home in Mobile, Parker awoke when he heard a crashing noise and his mother-in-law screaming from the front of the house where she was watching television and sleeping on the sofa. Parker walked toward the bedroom door, slammed it, and tried to lock it. However, two black males, one who was wearing a white T-shirt and blue jeans, later identified as the co-defendant, Marshall Smith, and another who was wearing a black T-shirt and a dark "do rag", believed to be Moffett,[1] kicked in the bedroom door much like they had done to the front door of the house which caused Parker's mother-in-law to scream.

> During the ordeal, while Parker wrestled with one of the intruders, the other intruder, believed to be Moffett, shot Parker in the abdomen. Later, the intruder who was wearing the white T-shirt, believed to be Smith, shot Parker in the leg. An ambulance transported Parker to the hospital where he remained for over a week. He suffered injuries to his leg and had surgery to place a rod where his femur was broken. As a result of the shot in his abdomen, physicians removed a portion of his intestines.

> Although Parker had instructed his wife, Michaelyn Parker, to take their infant to the bathroom and call emergency 911 when the two black males kicked in the bedroom door, she dropped the infant and fled to the bathroom with the telephone. While there, she heard yelling and screaming for money and several gunshots. The intruder wearing the white T-shirt, believed to be Smith, took jewelry, including her ring, her husband's rings, her husband's earrings, and their bracelets. Michaelyn identified the jewelry items several hours later after the police recovered them from one of the intruders.

---

[1] The Alabama Court of Criminal Appeals' use of the word "believed" in the context of Jamie Parker's trial testimony is at least partially grounded in defense counsel's cross-examination of Parker. Indeed, defense counsel garnered information from Parker on cross-examination—such as that he told police the perpetrator in the dark T-shirt had a thin build and dark skin—that undermined Parker's tentative identification of Moffett as one of the perpetrators of the crimes. (*See* Doc. 7-4, PageID. 890-900).

Parker's mother-in-law testified that she was watching television in the front room of the house when the intruders kicked in the door. She testified that she knew Moffett, who was wearing a darker T-shirt, because she knew his family and had visited with his mother in the past. She recalled seeing Moffett a week prior to the incident when he carried water to her vehicle for her.

Jason Bullock, an officer with the City of Mobile Police Department, responded to the burglary call. As he approached the street where the incident occurred, he saw a dark-colored Chevrolet Tahoe that he believed might be the subjects' vehicle so he pursued the vehicle. When the SUV finally stopped after being followed by Officer Bullock, a black male, later identified as Smith, exited the vehicle and ran. Officer Bullock gave chase, but was unable to catch the suspect. When he returned to the SUV, he detained the black-male driver, who identified himself as Moffett, and the passenger, a black female, LaT[ ]D[].

Officer Bullock later retraced Smith's path and recovered a loaded magazine from a pistol. Subsequently, Officer Christopher Adam Levy, also with the Mobile Police Department, detained Smith and recovered jewelry from his pockets, which Michaelyn Parker identified as belonging to her and her husband. Another City of Mobile Police Department Officer, Michael Kelley, photographed a partially smoked cigarette butt on the bed at [] Parker's house. He recovered a fired .45 caliber cartridge case and a fired .40 caliber shell from the residence. A fingerprint examiner conducted fingerprint analysis, but failed to match Moffett or Smith. Police officers also recovered a pack of Newport cigarettes from the SUV.

Officer Roland Frye took a black do-rag, a magazine with unfired shells, a Newport cigarette butt and various other items to the Alabama Department of Forensic Sciences. A forensic scientist testified that she obtained a DNA profile on the cigarette butt and concluded that it matched the DNA profile of Smith, the co-defendant. She also conducted DNA testing on the do-rag which excluded both Parker, the victim, and Smith, the co-defendant. A forensic firearm scientist determined that shots had been fired from both a .40 caliber gun and a .45 caliber gun.

Marshall Smith, the co-defendant, pleaded guilty to first-degree burglary and attempted murder and agreed to testify against Moffett in hopes of getting a reduced sentence. However, at the time of Moffett's trial, he had not yet been sentenced. He testified that he had known Moffett for several weeks prior to the incident. According to Smith, he and L[] D[] rode with Moffett to the Parker house in a dark-colored SUV. Smith stated that he was armed with a .45 caliber pistol and Moffett was armed with a .40 caliber pistol. Smith testified that, while wearing a white T-shirt, he shot Parker in the leg and Moffett, while wearing a black T-shirt and a

do-rag, shot Parker in the stomach.[2] After taking money, approximately $250, which Smith said he never saw, and jewelry from the residence, he and Moffett left the house. Thereafter, once the police officer stopped Moffett's SUV, Smith exited the vehicle and fled on foot. He disposed of the pistols as he ran. The jewelry remained in his pocket. He admitted that he had given three or four statements that were false. He stated that he had given differing information because he feared for his family's safety because Moffett might retaliate against him or his family.

Moffett did not testify at trial. Cedrick Yates testified for the defense that he and Moffett's co-defendant, Smith, were cell mates at Mobile Metro Jail. He stated that, during that time, Smith told him that Moffett was not involved in the burglary of the Parker residence. Yates testified that he witnessed Moffett and Smith fighting while in jail.

Moffett's mother testified that she talked with Parker's mother-in-law on the morning following the incident and she informed her that she did not see Moffett's son at her daughter's house during the burglary. However, Moffett's mother testified that she did not know where her son was at the time the incident occurred.

Several Mobile Police Department officers testified about the inconsistent statements provided by Moffett's co-defendant, Smith. The officers also testified about several leads that Smith provided to them in those statements. However, when the officers followed up on the leads Smith provided, they failed to reveal any new evidence. The officers further testified that the cellular telephone records from Smith's telephone showed that several telephone calls were made to Moffett's cellular telephone after the incident occurred. However, because L[] D[] was another passenger in the SUV, she could have placed the telephone calls.

L[] D[], the other passenger in the SUV on the evening of the incident, also testified for the defense. She stated that Smith was not with Moffett and her on the evening of the burglary. Instead, a male named "Pete" rode as the other passenger that evening and he fled when the police stopped the vehicle. D[] admitted that she had outstanding warrants for her arrest. According to D[], Moffett was not involved in the burglary of Parker's house.

(*Id.,* PageID. 1497-1501) (footnote added).

---

[2]    "We note that Marshall Smith's testimony differs from the testimony of Parker, the victim. Parker believed that Smith shot him in the [stomach] and Moffett shot him in the [leg]." (Doc. 7-10, PageID. 1500, n.1).

On appeal, Moffett challenged the trial court's denial of his motion for a new trial. (Doc. 7-10, PageID. 1501; *see also id.* ("He argues that the State reversibly erred when it failed to disclose impeachment evidence, in violation of the discovery order . . . . Moffett refers to the terms of the plea agreement or the agreed-upon sentence recommendation for Moffett's co-defendant, Marshall Smith.")). The Alabama Court of Criminal Appeals affirmed Moffett's convictions and sentences in an unpublished memorandum opinion issued on March 12, 2010 (Doc. 7-10, PageID. 1497-1505). *See Moffett v. State,* 75 So.3d 1226 (Ala. Crim. App. Mar. 12, 2010) (table). Moffett's application for rehearing (Doc. 7-11) was overruled on April 2, 2010 by the Alabama Court of Criminal Appeals (Doc. 7-12). Thereafter, Moffett's appellate attorney filed a petition for writ of certiorari (Doc. 7-13), which was denied without written opinion by the Alabama Supreme Court on May 7, 2010 (Doc. 7-14). That same day, May 7, 2010, a certificate of final judgment of affirmance was issued by the Clerk of the Alabama Court of Criminal Appeals. (Doc. 7-15).[3]

Moffett filed his first Rule 32 petition in the Mobile County Circuit Court collaterally attacking his convictions and sentences on February 15, 2011. (Doc. 7-17,

---

[3]     Moffett had 90 days from May 7. 2010, that is, until August 5, 2010, to file a petition for writ of certiorari to the United States Supreme Court. *See* S.Ct.R. 13; *see also Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) (recognizing that AEDPA's one-year statute of limitations "allows a prisoner the time to seek direct review in the Supreme Court of the United States."); *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations should have begun to run, therefore, on March 17, 1997."). In other words, because Moffett petitioned for certiorari review in the Alabama Supreme Court, his convictions did not become final until the ninety-day period for him to petition the United States Supreme Court for certiorari review expired, that is, August 5, 2010.

PageID. 1551-52 (Moffett's certification that he placed the Rule 32 in the mail on February 15, 2011)). This petition was denied and summarily dismissed, in accordance with Ala.R.Crim.P. 32.7(d), on May 1, 2012. (Doc. 7-19, PageID. 1658). Moffett appealed. (*See* Doc. 7-20). The Alabama Court of Criminal Appeals affirmed the judgment of the circuit court by unpublished memorandum opinion entered on December 7, 2012. (Doc. 7-22, PageID. 1684-86). A certificate of final judgment of affirmance was entered by the Clerk of the Alabama Court of Criminal Appeals on December 26, 2012. (Doc. 7-23, PageID. 1687).

Moffett took no action in his case from December 26, 2012 through January 6, 2016. (*Compare id. with* Doc. 7-24, PageID. 1689, 1693 & 1697). On January 7, 2016, Moffett, through counsel, filed a second Rule 32 petition in the Circuit Court of Mobile County, Alabama. (Doc. 7-24, PageID. 1697-1705). In his second state collateral petition filed in accordance with Ala.R.Crim.P. 32, Moffett claimed that "newly discovered material facts exist which requires that the convictions and sentences be vacated because Petitioner was denied his Sixth Amendment right to counsel, specifically: that Moffett's lawyer, Mr. Jay Kimbrough Esq. had previously represented the victim and the state's chief witness in the case, Mr. Jamie Parker[,] and thus had a conflict of interest." (*Id.,* PageID. 1698; *see also id.* ("This conflict was neither disclosed to the trial court nor to the Defendant.")).[4] Moffett then twice amended his Rule 32

_____

[4] Moffett included in the core of his Rule 32 petition the November 24, 2015 Affidavit of Damian Moffett, his brother. (*See id.,* PageID. 1703). This affidavit reads, as follows:

1.  At the end of June 2015, I met with my brother's attorney, Mr. Jay Kimbrough Esq.[,] to retrieve my brother's file, transcript and other documents.

(Continued)

petition. (*Compare* Doc. 7-24, PageID. 1707-09 *with id.,* PageID. 1712-26). The State

filed its response and motion to dismiss on September 16, 2016. (*Id.,* PageID. 1744-51).

An evidentiary was eventually conducted by the Mobile County Circuit Court almost

three years later on June 12, 2019. (*Compare id.,* PageID. 1813 *with id.,* PageID. 1877-

87 and Doc. 7-25, PageID. 1888-1961).

On September 10, 2019, the trial judge who conducted the evidentiary hearing

entered an order denying and dismissing Moffett's second Rule 32 petition. (Doc. 7-24,

PageID. 1844-1853).

### 1. Ineffective Assistance of Counsel

To the extent Moffett raises an ineffective assistance of counsel
claim, it is precluded. The Alabama Rules of Criminal Procedure state the
following, in pertinent part, as to "ineffective assistance of trial . . . counsel"
claims in the context of a "successive petition":

> Any claim that counsel was ineffective must be raised as
> soon as practicable, either at trial, on direct appeal, or in the
> first Rule 32, whichever is applicable. In no event can relief
> be granted on a claim of ineffective assistance of trial or
> appellate counsel raised in a successive petition.

Ala.R.Crim.P. 32.2(d).

---

2.      During our conversation, Mr. Kimbrough admitted to me that he
had represented the alleged victim in my brother's case prior to representing my
brother.

3.      Approximately one week later, I met with another lawyer who
found the case where Mr. Kimbrough represented Mr. Parker in DC-1992-20396.

(*Id.*). Damian Moffett, however, did not testify during the evidentiary hearing conducted on June
12, 2019. (*See* Doc. 7-24, PageID. 1878 (list of witnesses)).

The state court records reflect that Jay Kimbrough was appointed (by a district judge) to
represent Jamie Parker on September 18, 1992, with notification going to Kimbrough's
secretary (Doc. 7-24, PageID. 1729); four days later, however, retained counsel, David Barnett,
appeared for Parker in district court (*id.*).

Moffett does not dispute that the pending Petition is a successive Petition. As to a "successive petition" the Rules of Criminal Procedure provide:

> **(b) Successive Petitions.** If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule. *The court shall not grant relief on a successive petition on the same or similar grounds* on behalf of the same petitioner. *A successive petition on different grounds <u>shall be denied</u> unless* (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

Ala.R.Crim.P. 32.2(b) (emphasis added).

Instead, the Petitioner urges this Court to consider his ineffective assistance claim because it is based on newly discovered facts and because he brought the claim as soon as practicable. []

Moffett's argument finds no support in the law. First, Ala.R.Crim.P. 32.2(d) states: "In no event can relief be granted on a claim of ineffective assistance of trial or appellate counsel raised in a successive petition." The State has asserted this procedural bar. [] In response, Moffett offered no evidence, or certainly insufficient evidence if any, disproving the State's claim. As quoted above, Rule 32.3 states. In part: "[O]nce a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence." Therefore, this Court is barred from considering Moffett's claim alleging ineffective assistance of counsel.

Second, if at the time of Moffett's trial Kimbrough was unaware of his prior appointment to represent Parker (the State's position . . .), Moffett cannot show, and has not met his burden to show, that he was prejudiced by Kimbrough's successive representation as required by *Strickland v. Washington,* 466 U.S. 668 (1984).

Moffett argues that he was prejudiced because had he known about the successive representation, he would have retained different

counsel. . . . This allegation does not satisfy Moffett's burden under *Strickland*.

To prevail on a claim of ineffective assistance of counsel Petitioner must satisfy the two-pronged analysis established in *Strickland v. Washington,* 466 U.S. 668 (1984). First, Petitioner must identify specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part and show that the acts or omissions fall "outside the wide range of professionally competent assistance." Id. at 690. "A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient." *Hyde v. State,* 950 F.2d 344, 355 (Ala.Crim.App. 2006). Even if Petitioner can meet this burden, he must then show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S.at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "**The likelihood of a different result must be substantial, not just conceivable."** *Herrington v. Richter,* 131 S.Ct. 770, 792 (2011) [].

Moffett offered no evidence to even suggest that the outcome of []his trial would have been different had he retained different counsel. Moffett's burden here is especially high given the State's evidence against him. Among other things, the State presented the testimony of Moffett's Co-Defendant at trial.  . . . .

If, on the other hand, Kimbrough was aware of his prior representation of Parker at the time of Moffett's trial this cannot be a "newly discovered evidence" claim. Ala.R.Crim.P. 32.1(e)(1) (facts were unknown by the petitioner *or petitioner's counsel* at the time of trial) (emphasis added).

This Court finds that any claim of ineffective assistance of counsel is precluded by Ala.R.Crim.P. 32.2(d). The Court further finds that even if the claim were (sic) not precluded it is unproven. Even if the Court had found that a conflict existed, Moffett failed to prove that he was prejudiced in any way. Moffett is not entitled to any relief based on his ineffective assistance of counsel claim.

2.  Newly discovered evidence

Moffett asserts that his discovery of trial counsel's prior appointment constitutes newly discovered evidence. This claim also fails. The Alabama Court of Criminal Appeals has stated:

Under Rule 32.1, Ala.R.Crim.P., subject to the preclusions in

Rule 32.2, a remedy is afforded a defendant when the grounds supporting the requested relief are based on newly discovered facts (1) that were not known by petitioner or petitioner's counsel at the time of trial or sentencing in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence; (2) that were not merely cumulative to other facts that were known; (3) that were not merely amounting to impeachment evidence; (4) that if they had been known at the time of trial or of sentencing, the result probably would have been different; and (5) that establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received. Rule 32.1(e)(1) through (5), Ala.R.Crim.P. Rule 32.3 places the burden on the defendant to plead and prove facts necessary to obtain relief. Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief. []

*Boyd v. State,* 746 So.2d 364, 405-06 (Ala. Crim. App. 1999).

The Court of Criminal Appeals also stated:

Before the allegations in [a] Rule 32 petition can be considered to be based on newly discovered evidence, they must meet **all five** requirements of Rule 32.1(e). *See Tarver v. State,* 769 So.2d 338, 340-41 (Ala. Crim. App. 2000) ("We have repeatedly stated that before a claim may be considered as newly discovered evidence the claim must meet the definition of newly discovered evidence found in Rule 32.1(e).").

*Musgrove v. State,* 144 So.3d 410, 419 (Ala. Crim. App. 2012) (emphasis added).

Moffett cannot satisfy the requirements of Ala.R.Crim.P. 32.1(e)(1) which require him to show that the facts were not known by him ***or his counsel***. As discussed above, if trial counsel knew "at the time of trial" that he had a conflict, by definition, this cannot be newly discovered evidence. *Id.* Trial counsel was not called as a witness at the Evidentiary Hearing. Therefore, the content of [] trial counsel's actual knowledge at trial remains unknown. []

If, on the other hand[,] Kimbrough was unaware of his prior representation of Parker, Moffett cannot show that Kimbrough was

laboring under a conflict that prejudiced Moffett's defense. Any alleged deficiencies in Kimbrough's performance would simply be ineffective assistance which is unquestionably precluded at this point. Ala.R.Crim.P. 32.2(d).

This alleged fact also fails to satisfy two other requirements of Ala.R.Crim.P. 32.1. Even if true, this fact does not lead this Court to conclude that the result of the trial *probably* would have been different. Ala.R.Crim.P. 32.1(e)(4). The alleged fact also does not establish that Moffett is *actually innocent* or should not have received the sentence that he did. Ala.R.Crim.P. 32.1(e)(5). Because Moffett cannot satisfy all five requirements of Ala.R.Crim.P. 32.1(e) the Court finds that his newly discovered evidence claim is unproven and due to be dismissed.

### 3. Lack of subject matter jurisdiction

Moffett asserts that the Court lacked subject matter jurisdiction because he was denied the effective assistance of counsel. Though couched as a jurisdictional claim it is not. See *Ex parte Seymour,* 946 So.2d 536, 538 (Ala. 2006) (In deciding whether Seymour's claim properly challenges the trial court's subject-matter jurisdiction, we ask only whether the trial court had the constitutional and statutory authority to try the offense with which Seymour was charged). Moffett offered no additional evidence on the jurisdictional claim. The Court finds that this claim has no merit and Moffett has failed to prove this claim. It is due to be dismissed.

### 4. Conflict of Interest Claim

The origin of all of Moffett's claims is his belief that his trial counsel was operating under a conflict of interest thereby constructively denying Moffett the effective assistance of counsel. In order to properly address this claim a brief recitation of the sequence of events is necessary.

On Friday, September 18, 1992, the District Court of Mobile County appointed Jay Kimbrough to represent Jamie Parker. Parker was later named as the victim in the Moffett indictments. The case action summary sheet indicates that Kimbrough's secretary was notified of the appointment. No one claims that Kimbrough was present in court for the appointment. The Circuit Court notes that there is no indication that Kimbrough ever accepted the appointment.

The next entry on the Parker case action summary is on Tuesday, September 22, 1992. The record reflects that retained counsel, David Barnett, appeared in court with two individuals who were allowed to sign a property bond to secure Parker's release.

On October 2, 1992, Parker appeared in court with Attorney Barnett as counsel. The case was waived to the grand jury. Ultimately Parker's case was no-billed.

Seventeen years later, in 2008[,] Moffett was indicted for robbery (sic) first and burglary first. Parker was one of the victims in both of these cases. Moffett retained Kimbrough to represent him in these cases.

Moffett claims he learned in 2015 of Kimbrough's successive representation. The instant Rule 32 Petition followed. In order to prevail on a claim of successive representation the Alabama Court of Criminal Appeals has confirmed what a Petitioner like Moffett must show:

> "In a case alleging ineffectiveness of counsel through a conflict of interest from successive representation, mere proof that a criminal defendant's counsel previously represented a prosecution witness is insufficient to establish inconsistent interests, and <u>a defendant must show either that his counsel's earlier representation of the witness was substantially and particularly related to counsel's later representation of the defendant, *or* that counsel actually learned particular confidential information during prior representation of the witness that was relevant to the defendant's case</u>."

*M.S. v. State,* 822 So.2d 449, 452-53 (Ala. Crim. App. 2000), quoting *Williams v. State,* 574 So.2d 876, 878 (Ala. Crim. App. [1990]) (emphasis supplied).

Moffett presented no evidence on either of these points. The closet Moffett came was his suggestion that Kimbrough could have cross-examined Parker on his prior criminal history and did not. However, Moffett's expert conceded that Parker's criminal history is a matter of public record. [] Therefore, Parker's criminal history is not "particular confidential information" learned during prior representation. "Mere proof that [Moffett's] counsel previously represented a prosecution witness is insufficient to establish inconsistent interests." *M.S. v. State,* 822 So.2d 449, 452-53 (Ala. Crim. App. 2000). "The burden of proving that a conflict of interest rises to the level of ineffective assistance of counsel rests on the one asserting the conflict." *M.S. v. State,* 822 So.2d at 452.

Significantly, Moffett offered no proof that Kimbrough and Parker ever interacted with each other in 1992. In the Evidentiary Hearing the Petitioner's expert witness (Attorney Michael Hanle) testified as follows:

The Court: What did Mr. Kimbrough do during the days that you consider him to be attorney of record? What did he do for Mr. Parker?

Hanle: I don't know.

. . .

The Court: Now, do you have any evidence that bears on whether Mr. Kimbrough ever actually knew, I, in fact, represent Mr. Parker. Do you have any evidence that he ever actually knew that?

Hanle: No, sir.

The Court: Have you seen any documents that Mr. Kimbrough signed that appear in the file of Mr. Parker?

Hanle: No, sir.

The Court: Did Mr. Kimbrough ever file a notice of appearance in the case?

Hanle: Not from my review of the record.

Tr. 51-52.

In this regard, Moffett testified:

McDonough: And, Mr. Moffett, is it fair to say that you don't know if Mr. Kimbrough ever met with Mr. Parker or not, do you?

Moffett: No, sir.

Tr. 68.

In fact, Moffett could not offer any proof that Mr. Kimbrough ever knew he was appointed to represent Mr. Parker. Hanle testified as follows:

McDonough: Do you have any information that Mr. Kimbrough ever actually received knowledge that he was appointed to represent Mr. Parker?

Hanle: Based on this document, no, I don't.

McDonough: Or anything? Any evidence at all?

Hanle           No.

Tr. 39.

This Court finds that there was no conflict that impaired Kimbrough's representation in these cases. Moffett's own expert witness (Attorney Hanle) conceded that Kimbrough provided effective representation.

The Court:    Do you have an opinion on the effectiveness of the work that Mr. Kimbrough did in the Moffett case itself? Do you have an opinion on that?

Hanle:         As it relates to the conflict or as it relates –

The Court:    No, just as it relates to his effectiveness as counsel in the Moffett case. Do you have an opinion one way or the other on that?

Hanle:         Based on my reading of the transcript, the majority of it appears to be effective representation.

Tr. 51-52.

Furthermore, based on the evidence before it, this Court finds that Attorney Kimbrough would have strong defenses to a claim that he violated any rules of professional conduct based on these facts[.]

(Doc. 7-24, PageID. 1846-1852).

Moffett, through counsel, filed written notice of appeal on October 22, 2019. (Doc. 7-24, PageID. 1856-57). Ultimately, Moffett proceeded *pro se* on appeal of the denial/dismissal of his second Rule 32 petition. (*See* Doc. 7-27 (appellate brief penned by Moffett)). On October 9, 2020, the Alabama Court of Criminal Appeals issued its final unpublished memorandum decision affirming the judgment of the Mobile County Circuit Court. (Doc. 7-31, PageID. 2035-46).

And,

[a]ddressing a lawyer's conflict of interest as it relates to the Sixth Amendment right to effective counsel, this Court has explained:

> [I]n order to establish a violation of the Sixth Amendment, . . . [a defendant] must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 U.S. [335] at 348, 100 S.Ct. [1708] at 1718 [(1980)]. . . . To prove that an actual conflict adversely affected his counsel's performance, a defendant must make a factual showing that his counsel actively represented conflicting interests, Cuyler v. Sullivan, 446 U.S. at 350, 100 S.Ct. at 1719, and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.) . . ., cert. denied, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984). Once a defendant makes a sufficient showing of an actual conflict that adversely affected counsel's performance, prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)—i.e., that, but for counsel's unprofessional errors, the result of the proceeding would have been different—is presumed.

.        .        .

Additionally,

> [a]n actual conflict of interest occurs when a defense attorney places himself in a situation inherently conducive to divided loyalties. . . . If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take

some action that could be detrimental to his
other client.

.       .       .

At the evidentiary hearing, Michael Hanle, an attorney with more
than 25 years' experience, testified that records showed Kimbrough was
appointed to represent Parker in 1992 and that Kimbrough appeared
briefly as attorney of record until Parker retained counsel. [] Hanle opined
that Kimbrough's prior representation of Parker created a conflict and that
Kimbrough should have disclosed the conflict to Moffett. [] Hanle testified,
however, that he had not talked to Kimbrough, and he did not know the
extent of Kimbrough's representation of Parker. Hanle conceded that it
was possible that Kimbrough had declined the appointment because
attorney David Barnett filed a notice of appearance as a retained attorney
for Parker four days after Kimbrough's appointment. []

Moffett testified that Kimbrough never told him that he had
represented Parker and that if Kimbrough had done so, he "[p]robably"
would have "retained another attorney." [] He testified that Kimbrough "did
a terrible job" at his trial, particularly in his cross-examination of Parker. []

David Barnett testified that he had been an attorney in Mobile for 50
years. He testified that he represented Parker in 1992 and appeared on
his behalf on September 22, 1992, to get a bond set for him. [] He testified
that he did not remember Kimbrough assisting with the representation in
any way. []

In its order denying the Rule 32 petition, the circuit court held that to
the extent Moffett raised an ineffective-assistance-of-counsel claim, it was
precluded under Rule 32.2(d), Ala. R. Crim. P. [] The circuit court also held
that the petition was successive. . . .

The circuit court also held that Moffett's claim lacked merit. The
court noted that because Kimbrough did not testify at the hearing, "the
content of [Kimbrough's] actual knowledge" about whether he had
represented Parker was "unknown." The circuit court held that "if at the
time of Moffett's trial Kimbrough was unaware of his prior appointment to
represent Parker," Moffett could not prove "that he was prejudiced by
Kimbrough's successive representation." [] And the circuit court held that if
Kimbrough did know at the time of trial that he had represented Parker,
Moffett's claim could not be newly discovered evidence under Rule
32.1(e)(1), Ala. R. Crim. P., which requires a petitioner to prove that "the
facts relied upon were not known by the petitioner or the petitioner's
counsel at the time of trial or sentencing or in time to file a posttrial motion
pursuant to Rule 24, or in time to be included in any previous collateral

proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence." Rule 32.1(e)(1), Ala. R. Crim. P. []

As to Moffett's argument that Kimbrough had a conflict of interest, the circuit court held that Moffett had failed to

> show either that his counsel's earlier representation of [Parker] was substantially and particularly related to counsel's later representation of the defendant, or that counsel actually learned particular confidential information during prior representation of [Parker] that was relevant to [Moffett's] case.

. . . The circuit court held that

> [t]he closest Moffett came [to proving either point] was his suggestion that Kimbrough could have cross-examined Parker on his prior criminal history and did not. However, Moffett's expert conceded that Parker's criminal history is a matter of public record. Therefore, Parker's criminal history is not particular confidential information learned during a prior representation.

[] The circuit court also held that, although couched as a jurisdictional claim, Moffett's claim was not jurisdictional. []

The record and law support the circuit court's judgment. Moffett's claim, either as a claim alleging ineffective assistance of counsel based on a conflict of interest or as a newly discovered evidence claim, is not jurisdictional. . . . As an ineffective-assistance-of-counsel claim, the claim is precluded under Rules 32.2(b) and 32.2(d). The claim also does not meet the requirements of a newly discovered evidence claim under Rule 32.1(e). And the claim lacks merit because Moffett did not prove that Kimbrough had a conflict of interest. []

(*Id.,* PageID. 2041-45) (all quotation marks omitted). Ultimately, Moffett's *pro se* petition for writ of certiorari (Doc. 7-32) was denied by the Alabama Supreme Court on December 11, 2020 (Doc. 7-33), with the certificate of final judgment of affirmance being issued that same date (*compare id. with* Doc. 7-34).

Moffett filed his federal habeas corpus petition in this Court on January 25, 2021. (Doc. 1, PageID.34). In his federal petition, Moffett raises but one claim, namely, that (based on newly discovered material facts) his trial attorney, Jay Kimbrough, was operating under a conflict of interest during his trial that constructively denied him his Sixth Amendment right to counsel. (*See id.,* PageID. 28 & 35). In other words, Petitioner claims that he was deprived of his Sixth Amendment right to counsel as a result of his trial counsel laboring under a conflict of interest. (*See id.*).

In his federal petition, Moffett attempts to explain why the one-year limitations period contained in 28 U.S.C. § 2244(d) does not apply to him. (*Id.,* PageID. 33).

> Petitioner's claim [is] based on newly discovered material facts . . . not known to the Petitioner, through the exercise of [reasonable] diligence, prior to discovery of the factual basis of the claim. Therefore, Petitioner's habeas petition is timely pursuant to 28 U.S.C. § 2244(d)(1)(D) and the Court is permitted to review the merits of Petitioner's habeas petitions.

(*Id.*). In his answer and response, the Respondent argued that Moffett's habeas petition is time-barred under 28 U.S.C. § 2244(d)(1), specifically subsection (A). (*See* Doc. 7, PageID. 92-95). Thereafter, the undersigned entered an order on April 4, 2021, noting that the Respondent's position appeared to be correct "at least with respect to 28 U.S.C. § 2244(d)(1)(A)[,]" and ordered Moffett to show cause "why this cause of action should not be dismissed due to his failure to comply with 28 U.S.C. § 2244(d)(1)(A)." (Doc. 8, PageID. 2070). The Order went on to solicit additional information/argument from Moffett. (*Id.*).

> To the extent Moffett relies not at all on § 2244(d)(1)(A) but, instead, solely on § 2244(d)(1)(D) (providing that the one-year limitations period can run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"), as all appearances suggest (*see* Doc. 1, PageID. 33 (citing to § 2244(d)(1)(D)), he is **ORDERED,** by **May 7**, **2021**, to explicitly state that

he relies solely on § 2244(d)(1)(D) (and concede that his petition is untimely under § 2244(d)(1)(A)) **and** establish exactly when in 2015 he claims to have discovered the factual predicate of his ineffective assistance of counsel claim against Jay Kimbrough, based upon a conflict of interest, and how that factual predicate could not have been discovered sooner through the exercise of due diligence. Should the Petitioner fail to respond to this order within the authorized time period, an inference will be drawn from his failure to respond that he has no rebuttal to the statute-of-limitations defense.

(*Id.*). Moffett filed his response to this Court's show cause order on May 5, 2021 (*see*

Doc. 9, PageID. 2077 (Moffett's certification that he placed his response into the prison

internal mailing system on May 5, 2021)). In his response, Moffett concedes that the

instant petition is time-barred under 28 U.S.C. § 2244(d)(1)(A) but contends that it is

timely under 28 U.S.C. § 2244(d)(1)(D) because "he could not have discovered the

factual predicate of his claim [  ] sooner than June 23, 2015, through the exercise of

due diligen[ce.]" (Doc. 9, PageID. 2073-74).

Moffett submits in June 2015 he learned from information given to him by his brother (DAMIAN MOFFETT[)], when he went to Mr. Kimbrough's office to retrieve my Trial Transcripts and files, at that time it was discovered that Kimbrough had represented Jamie Parker, the victim in my current Burglary and Attempted-Murder cases[.] [A]fter further investigation, Moffett[] discovered that Kimbrough did in fact represent Jamie Parker previously in some serious felony cases, including a[n] Attempted Murder charge. It really shock[ed] me because Mr. Kimbrough did not disclose this to me or the Court[] prior to, during[,] or after his representation. I then filed a Rule 32 Ala.R.Crim.P.[] Petition on November 24, 2015, pursuant to Rule 32.1(e)(1) Ala.R.Crim.P., in which Moffett asserted that he was entitled to a New Trial based on Newly Discovered Evidence that his Trial counsel, Jay Kimbrough, labored under a Conflict of Interest when he represented me, because he had previously represented the victim in my case[.] Petitioner further submitted evidence demonstrating how Kimbrough's action adversely affected his performance and prejudiced the petitioner.

Petitioner request[s] that this court take judicial notice of the State court records, as petitioner in the exercise of due diligence, could not have discovered the factual predicate of his conflict of interest/ineffective assistance of counsel claim any sooner, and because the State fail[ed] to

refute Moffett's demonstration by placing Kimbrough under oath to determine his intent, reasons, knowledge and motive for his nondisclosure.

(*Id.,* PageId. 2074).

## **CONCLUSIONS OF LAW**

**A.** **Statute of Limitations.** The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Subsections (A), (B) and (C) of § 2244(d)(1) do not apply to Petitioner's case, and Moffett makes no showing that any of these subsections apply. (*Compare* Doc. 1 *with* Doc. 9). Indeed, Moffett has specifically conceded that the instant petition is time-barred under subsection (A) of § 2244(d)(1). (Doc. 9, PageID. 2073). Because Moffett's concession in this regard is unassailable,[5] the timeliness of his habeas corpus petition

---

[5]    Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" On direct appeal, the Alabama Court of Criminal Appeals affirmed Moffett's convictions and sentences on March 12, 2010, *Moffett v. State,* 75 So.3d 1226 (Ala. Crim. App. Mar. 12, 2010) (table), his application for rehearing (Doc. 7-11) was overruled on April 2, 2010 (Doc. 7-13), and his petition for writ of certiorari (Doc. 7-13) was denied without written opinion by the Alabama Supreme Court on May 7, 2010 (Doc. 7-14; *see also* Doc. 7-15 (certificate of final judgment of affirmance was issued on May 7, 2010)). Because Moffett petitioned for certiorari review in the Alabama Supreme Court, his convictions did not become final until the ninety-day period for him to petition the United States Supreme Court for certiorari review expired, that is, August 5, 2010. *Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) (recognizing that AEDPA's one-year statute of limitations "allows a prisoner the time to seek direct review in the Supreme Court of the United States."); *see also Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) ("Appellant was entitled to file a petition for writ of certiorari in the United States Supreme Court within 90 days of the entry of the judgment against him by the Florida Supreme Court. Sup.Ct.R. 13.1. The statute of limitations under 28 U.S.C. § 2244(d) should not have begun to run until this 90-day window had expired. Appellant's state judgment became final on December 13, 1996, when the Florida Supreme Court denied Appellant's motion for a rehearing. The statute of limitations should have begun to run, therefore, on March 17, 1997.").

Accordingly, Moffett's one-year limitations period began running on August 5, 2010 and ran unabated for 193 days until Petitioner collaterally attacked his convictions and sentences in the state courts of Alabama by filing a Rule 32 petition in the Circuit Court of Mobile County, Alabama on February 15, 2011 (*see* Doc. 7-17, PageID. 1551-52), thereby tolling the one-year limitations provision. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'"). Moffett's first Rule 32 petition was summarily dismissed by the trial court on May 1, 2012 (Doc. 7-19, PageID. 1658) and this summary dismissal was affirmed by the Alabama Court of Criminal Appeals on December 7, 2012 (Doc. 7-22). Thereafter, a certificate of final judgment of affirmance was entered by the Clerk of the Alabama Court of Criminal Appeals on December 26, 2012. (Doc. 7- (Continued)

must be calculated under § 2244(d)(1)(D) based upon the date on which the factual predicate of his ineffective assistance of counsel claim could have been discovered through the exercise of due diligence.

Moffett has consistently argued that the instant habeas corpus petition is timely under subsection (D) of 28 U.S.C . § 2244(d)(1). (*Compare* Doc. 1, PageID. 33 *with* Doc. 9, PageID. 2073-74). "'Section 2244(d)(1(D) runs the [statute-of-limitations] clock from "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence."'" *Cole v. Warden, Georgia State Prison,* 768 F.3d 1150, 1155 (11th Cir. 2014) (quoting *McQuiggin v. Perkins,* 569 U.S. 383, 133 S.Ct. 1924, 1932, 185 L.Ed.2d (2013), in turn quoting 28 U.S.C. § 2244(d)(1)(D)), *cert. denied,* 575 U.S. 989, 135 S.Ct. 1905, 191 L.Ed.2d. 773 (2015).

> The analysis of "factual predicate" and "due diligence" in § 2244(d)(1)(D) is symbiotic. The factual predicate first must be determined to give meaning to due diligence in discovering the claim for a particular petitioner's case.

---

23, PageID. 1687). Thus, Moffett's one-year limitations period under § 2244(d)(1)(A) began to run once again on December 27, 2012 and "ran" until it expired some 172 days later on June 13, 2013. Because, as reflected above, Moffett took no action in his case from December 26, 2012 until he filed his second Rule 32 petition in the Circuit Court of Mobile County on January 7, 2016 (Doc. 7-24, PageID. 1697-1705; *compare id. with* Doc. 7-23, PageID. 1687), even if this Court were to consider the second Rule 32 "properly filed," there existed no period of Petitioner's one-year limitations period under § 2244(d)(1)(A) that could be tolled. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000). Therefore, as Moffett concedes (Doc. 9, PageID. 2073), there is no dispute that if the petition were governed by the statutory provision set forth in subsection (A), it would be untimely, as the limitations period had already expired and there was no period remaining to be tolled by June 14, 2013. *See Webster, supra*.

> "[I]t should go without saying that a factual predicate must consist of *facts*. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." *Rivas v. Fischer,* 687 F.3d 514, 535 (2d Cir. 2012). The "factual predicate" also has been referenced as the underlying "vital facts" of a petitioner's claim.
>
> .      .      .
>
> "'Due diligence . . . is an inexact measure of how much delay is too much.'" . . . [T]he due diligence required of a state prisoner in filing a § 2254 habeas petition must be determined on a case-by-case basis relative to the factual predicate.

*Id.* at 1155 & 1156; *see also id.* at 1157 ("'Time begins when the prisoner knows (or through diligence could discover) the important facts, *not when the prisoner recognizes their legal significance.*'") (emphasis in original).

The vital or important "fact" in this case is that Kimbrough represented Jamie Parker, the principal victim of Moffett's crimes, in a criminal matter before he represented Moffett in the instant case. According to Moffett, he did not know this "fact" until June 23, 2015, after his brother went to Kimbrough's office in June of 2015 to pick up some case materials for him and was told by Kimbrough about Kimbrough's previous representation of the victim. (*See* Doc. 9, PageID. 2073-74). Following Moffett's logic, his one-year limitations period began running on June 23, 2015 and was tolled some six months later when he filed his second Rule 32 petition in the Mobile County Circuit Court on January 7, 2016 (*see* Doc. 7-24, PageID. 1697-1705), until December 11, 2020, when the Alabama Supreme Court denied his petition for writ of certiorari (Doc. 7-33) and the certificate of final judgment of affirmance issued (*compare id. with* Doc. 7-34). According to Moffett, because he filed the instant petition on January 25, 2021 (*see* Doc. 1, PageID. 34), a mere 45 days after he exhausted his claim in the state courts of Alabama, his petition is timely under § 2244(d)(1)(D).

The undersigned, however, cannot accept Moffett's logic and here is why. Given that any representation of Parker by Kimbrough has been a matter of public record since September of 1992 and Kimbrough purports to have readily admitted his connection to Parker when Moffett's brother visited his office in June of 2015, there is no reason to expect that Moffett could not have discovered the evidence earlier through the exercise of due diligence. Indeed, nowhere in his habeas petition (Doc. 1) or his response to the show cause order (Doc. 9) does Moffett address or show that he could not have discovered the new evidence earlier with the exercise of due diligence; instead, he simply argues in a conclusory manner that he could not have discovered the evidence earlier (*see id.,* PageID. 2074). That this is the undersigned's conclusion should come as no surprise particularly since Moffett appears to have taken no action in his case from December 26, 2012, until late June of 2015, and this evidence was certainly discoverable before June of 2015.[6] *See, e.g., Braxton v. Secretary, Dep't of Corrections*, 2010 WL 2740071, *3 (M.D. Fla. Jul. 12, 2010) (recognizing that the question under subsection (D) "is not when the prisoner first discovers the new evidence, but when he could have learned of the evidence through the exercise of due diligence."). Therefore, this Court is left without the means to find that Moffett's federal habeas corpus petition has been timely filed under § 2244(d)(1)(D).

Moffett makes no alternative argument (*compare* Doc. 1 *with* Doc. 9) that he is entitled to equitable tolling of the statutory filing date, *see Cole, supra,* 768 F.3d at 1158-59 (considering petitioner's alternative equitable tolling argument in the context of

---

[6]     For instance, Moffett has not offered a good reason for not instructing his brother to visit Kimbrough much earlier than he did.

§ 2244(d)(1)(D)), nor does he contend that he is actually innocent of the crimes for which he stands convicted (first-degree burglary and attempted murder), *see San Martin v. McNeil,* 633 F.3d 1257, 1268 (11th Cir.) ("The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent."), *cert. denied sub nom. San Martin v. Tucker,* 565 U.S. 843, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011). Accordingly, since Petitioner bears the burden of establishing that he is entitled to equitable tolling of the limitations period in § 2244(d)(1)(D), *compare Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'") and *Pugh, supra,* 465 F.3d at 1300-01 ("Pugh bore the burden of establishing that equitable tolling was warranted.") *with Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) ("[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."), or that he is actually factually innocent of first-degree burglary and attempted murder, *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 1928, 185 L.Ed.2d 1019 (2013) ("[A]ctual [factual] innocence, if proved [by the petitioner], serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."),[7]  the undersigned simply reiterates that the instant petition is untimely under § 2244(d)(1)(D).

---

[7]    "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.*, quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (other citation omitted). Here, of course, Moffett makes no actual innocence argument because he has offered no new evidence establishing his actual
(Continued)

Despite this conclusion, to the extent reasonable minds can differ over whether Moffett's habeas corpus petition is timely under § 2244(d)(1)(D), the undersigned recommends that this Court determine that Petitioner's sole claim has no merit.

**B.** **Merits Review of Claim Raised by Moffett**.  In accordance with the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner is entitled to habeas corpus relief "on any claim adjudicated on the merits in state court if that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Cox v. McNeil,* 638 F.3d 1356, 1360 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)), *cert. denied sub nom. Cox v. Tucker,* 565  U.S. 906, 132 S.Ct. 309, 181 L.Ed.2d 189 (2011); *see also Jones v. Secretary, Department of Corrections,* 644 F.3d 1206, 1209 (11th Cir.) ("[U]nder AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was 'contrary to' federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); or that it 'involved an unreasonable application' of such law, § 2254(d)(1); or that it was 'based on an unreasonable determination of the facts' in the light of the record before the court, §

---

(factual) innocence of  first-degree burglary or the attempted murder of Jamie Parker (*compare* Doc. 1 *with* Doc. 9); therefore, it is clear that petitioner cannot take advantage of the actual innocence gateway recognized in *McQuiggin.*

2254(d)(2).”[8]), *cert. denied sub nom. Jones v. Tucker,* 565 U.S. 1041, 132 S.Ct. 590,

181 L.Ed.2d 433 (2011).[9]

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389

(2000); *see Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) ("In addition, a

state court decision involves an unreasonable application of Supreme Court precedent

'if the state court either unreasonably extends a legal principle from [Supreme Court]

precedent to a new context where it should not apply or unreasonably refuses to

---

[8]     As amended, § 2254 now provides:

        (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

                (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

                (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

[9]     The Act presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

extend that principle to a new context where it should apply.'"), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001).

> "A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's." *Windom v. Sec'y, Dep't of Corr.,* 578 F.3d 1227, 1247 (11th Cir. 2009) . . . . A state court decision involves an unreasonable application of federal law when "it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putnam v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) . . . . The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Spencer v. Secretary, Dep't of Corrections,* 609 F.3d 1170, 1177-1178 (11th Cir. 2010), *cert. denied,* 562 U.S. 1203, 131 S.Ct. 1049, 178 L.Ed.2d 869 (2011).

1. **Effectiveness of Assistance of Counsel.**  As set forth above, Moffett contends that he was deprived of his right to counsel under the Sixth Amendment as a result of his trial counsel laboring under a conflict of interest. With respect to this claim, which may not be barred from consideration by the one-year limitations period, the appropriate "inquiry turns upon whether the state decision was contrary to or an unreasonable application of *Strickland* [and its relevant progeny]." *See, e.g., Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. Jul. 12, 2011) (citing

*Woodford v. Visciotti,* 537 U.S. 19, 22, 24-25, 123 S.Ct. 357, 358-360, 154 L.Ed.2d 279

(2002)), *cert. denied*, 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012).[10]

> First, under § 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of facts materially indistinguishable facts."

> Next, under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts" of the case. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Importantly, for a federal habeas court to find a state court's application of Supreme Court precedent "unreasonable," it is not enough that the state court's adjudication be "incorrect or erroneous"; that application must have been "objectively unreasonable."

*Frazier v. Bouchard,* 661 F.3d 519, 530-531 (11th Cir. 2011) (internal citations and

brackets omitted), *cert. denied sub nom. Frazier v. Thomas,* 568 U.S. 833, 133 S.Ct.

410, 184 L.Ed.2d 58 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981 (11th

Cir. Apr. 20, 2010) ("Under the 'unreasonable application' prong of § 2254(d)(1), the

habeas petitioner bears the burden 'to show that the state court applied *Strickland* to

the facts of his case in an objectively unreasonable manner.' 'The question is not

whether a federal court believes the state court's determination under the *Strickland*

standard was incorrect but whether, that determination was unreasonable—a

substantially higher threshold.'" (internal citations omitted)). The foregoing makes clear

that "'[i]n addition to the deference to counsel's performance mandated by *Strickland*,

---

[10]     In other words, "[i]t is beyond question that, in addressing the relevant claim, we are dealing with an area of 'clearly established Federal law [under *Strickland* and its progeny].'" *Frazier, supra,* 661 F.3d at 527 n.12 (citation omitted).

the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision.'" *Means, supra,* 433 Fed.Appx. at 855 (citation omitted).

As explained below, Moffett's claim of ineffective assistance of trial counsel based on a conflict of interest fails. Before looking at this claim in greater detail, the undersigned notes that this is not a § 2254(d)(2) case because petitioner nowhere (*see* Docs. 1 & 9) shows by clear and convincing evidence that any of the state courts' factual findings were unreasonable. *See, e.g., Duran v. Walker,* 223 Fed.Appx. 865, 871 (11th Cir. Mar. 29, 2007) ("[A] state court's factual findings are presumed correct, and the petitioner can rebut them only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). As such, for a state court's adjudication to result in an unreasonable determination of the facts in light of the evidence presented, '[n]ot only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.' *Callahan v. Campbell,* 427 F.3d 897, 926 (11th Cir. 2005), *cert. denied*, 549 U.S. 952, 127 S.Ct. 427, 166 L.Ed.2d 269 (2006)."), *cert. denied,* 552 U.S. 874, 128 S.Ct. 179, 169 L.Ed.2d 122 (2007). In short, Moffett has not presented clear and convincing evidence to show that Kimbrough knew at the time of his trial that he (Kimbrough) had represented the victim of the attempted murder, Jamie Parker, on past criminal matters. Accordingly, the factual premise of the state courts' decisions (that being the lack of clarity regarding whether Kimbrough knew at the time of Moffett's trial that he had represented Jamie Parker on past criminal matters) stands, and the undersigned considers solely whether the merits decisions of the Mobile County Circuit Court and the Alabama Court of

Criminal Appeals are contrary to, or an unreasonable application of, *Strickland v. Washington* and its progeny under § 2254(d)(1).

a.  **Whether Moffett was Deprived of his Right to Counsel Under the Sixth Amendment as a Result of his Trial Counsel Laboring Under a Conflict of Interest**.  The undersigned appreciates Moffett's principal attack on the state courts' decision to be their failure to find that Kimbrough's failure to conduct a thorough and sifting cross-examination of victim Jamie Parker, a former client (to include inquiring of Parker's prior criminal charges), amounted to an actual conflict of interest adversely affecting Kimbrough's performance at his (Moffett's) trial. (*See* Doc. 1, PageID. 38-43). In making this argument, Moffett nowhere contends or demonstrates that the state courts of Alabama either arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or that they decided the case differently than the Supreme Court has on a set of facts materially indistinguishable facts. (*See id.*). And because Moffett has not (nor can he) made either of these showings,[11] § 2254(d)(1)'s "contrary to" clause is inapplicable.

As the undersigned reads Moffett's petition (Doc. 1) and his response to the undersigned's show cause order (*see* Doc. 9, PageID. 2075-76), Moffett seems to argue that though Alabama's state courts identified the correct governing legal principle from the Supreme Court's decisions, they unreasonably applied that principle to the facts of his case under § 2254(d)(1)'s "unreasonable application" clause. (*See* Doc. 1,

---

[11]     Indeed, Petitioner concedes that the Alabama Courts identified the correct legal premises and has not cited to a Supreme Court case factually indistinguishable from this case which was decidedly differently from the decisions by the Alabama courts who reviewed Moffett's second Rule 32 petition. (*See* Doc. 1).

PageID. 38-43; Doc. 9, PageID. 2075-76). In truth, Moffett appears to be asking this Court to make its own determination without considering the decisions by the State courts (*see id*.); however, this is exactly the function this Court cannot perform. Instead, as set forth in *Frazier, supra,* "it is not enough that the state court's adjudication be 'incorrect or erroneous'; that application must have been 'objectively unreasonable.'" 661 F.3d at 531. As explained below, the state courts' adjudication of the issue was not incorrect or erroneous, and, therefore, was certainly not objectively unreasonable.

As Moffett's habeas corpus petition establishes (*see* Doc. 1, PageID. 38-43), the Mobile County Circuit Court and the Alabama Court of Criminal Appeals recognized the controlling legal principle (*see, e.g.,* Doc. 7-31, PageID. 2041) that "there is no Sixth Amendment violation, and thus no reversal, absent a showing that an actual conflict of interest adversely affected counsel's performance." *Hunter v. Secretary, Dep't of Corrections,* 395 F.3d 1196, 1200 (11th Cir.) (citations omitted), *cert. denied,* 546 U.S. 854, 126 S.Ct. 120, 163 L.Ed.2d 128 (2005); *see also Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) ("In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."). Moreover, it has long been recognized by the Eleventh Circuit that with respect to successive representation, as here, the "test for actual conflict . . . requires a showing of 'inconsistent interests.'" *Smith v. White,* 815 F.2d 1401, 1405 (11th Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).

> We hold that in a successive representation case, mere proof that a criminal defendant's counsel previously represented a witness is insufficient to establish "inconsistent interests." In such a context, if defendant fails to show that either (1) counsel's earlier representation of

the witness was substantially and particularly related to counsel's later representation of defendant, or (2) counsel actually learned particular confidential information during the prior representation of the witness that was relevant to defendant's later case, then defendant has not come even close to showing "inconsistent interests."

*Id.* at 1405-06 (footnote omitted). This is exactly the test applied by the Mobile County Circuit Court. (Doc. 7-24, PageID. 1850-52; *see also* Doc. 7-31, PageID. 2044 (opinion of the Alabama Court of Criminal Appeals discussing the circuit court's analysis)). And the undersigned finds that the trial court correctly applied the test and correctly determined that Moffett had satisfied neither prong. Indeed, there was simply no evidence produced in the state courts that Kimbrough's putative four-day 1992 representation of Jamie Parker, a witness against Moffett, was in any manner related to Kimbrough's representation of Moffett, which began almost 16 years later on April 21, 2008 (*see* Doc. 7-1, PageID. 103 (notice of appearance as counsel of record for Moffett filed by Kimbrough on April 21, 2008)),[12] much less that there was a substantial and particular relationship. The length of time separating the two representations alone establishes the lack of a substantial and particular relationship, in absence of Moffett offering proof of such relationship (which he has not done). Moreover, the Alabama courts correctly determined that Moffett did not satisfy his burden of demonstrating that Kimbrough actually learned particular confidential information during his prior representation of Parker that was relevant to Moffett's case. To be sure, while

---

[12]    Indeed, as pointed out by the Alabama state courts, because Moffett did not call Kimbrough as a witness during his evidentiary hearing, the content of Kimbrough's actual knowledge about whether he represented Parker was (and remains) unknown.

Kimbrough certainly could have cross-examined Parker about his prior criminal record,[13]

the information regarding Parker's criminal past (as the Alabama courts found) is a

matter of public record and is not something that Kimbrough would have learned solely

through his brief (and putative) representation of Parker. And since Moffett did not call

Kimbrough as a witness during the Rule 32 evidentiary hearing (and he did not call his

own brother as a witness either), there is simply no basis upon which this Court can find

that Kimbrough learned any particular confidential information during his prior four-day

representation of Parker[14] that was somehow relevant to Moffett's case. And, again, the

---

[13]     It is difficult for the undersigned to discern how use of Parker's prior criminal history to attack him would have been useful (even if relevant, which is not a sure thing) given that the defense was one of misidentification of Moffett as the second perpetrator and defense counsel, as previously recognized, scored numerous points at trial by garnering information from Parker on cross-examination—such as that he told police the perpetrator in the dark T-shirt had a thin build and dark skin—that undermined Parker's tentative identification of Moffett as one of the perpetrators of the crimes. In other words, given that there was no dispute at trial that the home Parker shared with his wife, children, and mother-in-law was burglarized or that Parker was shot, the undersigned cannot perceive how challenging Parker with his prior criminal history would have "cut through" Parker's tentative identification of Moffett as one of the perpetrators more than defense counsel's direct attack on Parker's tentative identification of Moffett. Besides, any use of Parker's criminal history would not have undermined the testimony of Parker's mother-in-law (who identified Moffett as one of the perpetrators) or that of Marshall Smith, Moffett's co-defendant (who testified that he shot Parker in the leg and that Moffett shot Parker in the stomach).

[14]     As noted by the trial court, no evidence was offered at the evidentiary hearing tending to establish that Kimbrough knew he had been appointed by the district court to represent Parker in 1992, much less that Kimbrough had any communications with Parker (whether confidential or not). The only piece of evidence tenuously "tying" Kimbrough to Parker is the affidavit statement of Moffett's brother that Kimbrough informed him at the end of June 2015 that he represented Parker in the past; however, Moffett's brother did not testify during the Rule 32 evidentiary hearing. Moreover, even had such testimony been given by Moffett's brother, it would not have been enough to establish an actual conflict of interest because it does not speak to inconsistent interests. *See Smith, supra,* 815 F.2d at 1405 ("[M]ere proof that a criminal defendant's counsel previously represented a witness is insufficient to establish 'inconsistent interests.'"). Moffett's suggestion that the State should have called Kimbrough to the stand during his Rule 32 evidentiary hearing (Doc. 9, PageID. 2074) ignores the fact that it was Moffett's responsibility alone to establish his entitlement to relief by establishing that an actual conflict of interest adversely affected Kimbrough's trial performance.

length of time between the two representations—almost 16 years—undermines any possibility (or conceivability) that Kimbrough learned any particular confidential information during his representation of Parker relevant to Moffett's case.

In light of the foregoing, it is clear to the undersigned that Moffett did not come close to establishing inconsistent interests during the Rule 32 evidentiary hearing. And without inconsistent interests, there can be no finding that an actual conflict of interest adversely affected Kimbrough's trial performance. Accordingly, Moffett is entitled to no relief under § 2254(d)(1)'s "unreasonable application" clause, as he has not shown that the state courts' adjudication of the issue was incorrect or erroneous (and, certainly, has not demonstrated that such adjudication was objectively unreasonable). In short, Moffett's claim has no merit.

**C.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim

of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"), but also on the merits, such that a COA should issue only when the Petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604; *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El, supra,* 537 U.S. at 336, 123 S.Ct. at 1039 ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'").

In the instant case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Moffett should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar

is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Nevertheless, even if that were the case, it is recommended that the Court find that reasonable jurists could not debate whether Moffett's § 2254 habeas petition—raising the sole issue that he was deprived of his right to counsel under the Sixth Amendment as a result of his trial counsel laboring under a conflict of interest—should be resolved in a different manner or that the issue presented is adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a certificate of appealability with respect his conflict-of-interest claim.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge again recommends that Wytiki Rayshun Moffett's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (Doc. 1), be dismissed as time-barred under § 2244(d)(1)(D). Alternatively, Petitioner is not entitled to any relief in this Court because his sole claim of ineffective assistance of counsel on account of a conflict of interest has no merit. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is

found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 19th day of May, 2021.

              s/P. Bradley Murray
              **UNITED STATES MAGISTRATE JUDGE**